# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JONATHAN HITT,**<br>**And others similarly situated,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GREGG ABBOTT,** | § | |
| **in his official capacity, and** | § | |
| | § | |
| **MARSHA MCLANE,** | § | |
| **in her official capacity and** | § | |
| **individual capacity, and** | § | |
| | § | |
| **DANIEL RAKES,** | § | |
| **in his official capacity and** | § | **CIVIL ACTION NO. 1:19-CV-00735-LY** |
| **individual capacity, and** | § | |
| | § | |
| **WELLPATH RECOVERY** | § | |
| **SOLUTIONS f/k/a Correct Care,** | § | |
| **LLC d/b/a/ CCRS of Texas, LLC** | § | |
| | § | |
| **BRIAN THOMAS, and** | § | |
| | § | |
| **EDWARD TOWNS, JR., and** | § | |
| | § | |
| **KAREN HARMON,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Patient and Plaintiff, Jonathan Hitt ("Plaintiff" or "Hitt"), brings this 42 U.S.C. §

1983 lawsuit because he has been, and continues to be, retaliated against in response to

him filing a federal lawsuit to redress constitutional deprivations, and because the

Defendants have involuntarily hospitalized Plaintiff – and over 300 patients similarly situated to him – without providing an adequate means for recovery or release.

## I.
## INTRODUCTION

1.    Plaintiff Jonathan Hitt is a patient. Defendants have been tasked with his health care. Three observations about treatment explain Mr. Hitt's request for judicial intervention:

> "As to diseases, make a habit of two things — to help, or at least, to do no harm."
> > — Hippocrates

> "We are used to thinking of doctoring as a solitary, intellectual task. But making medicine go right is less often like making a difficult diagnosis than like making sure everyone washes their hands."
>
> > — Atul Gawande
> > *Better: A Surgeon's Notes on Performance*

> "How do you tell the psychiatrists from the patients in the hospital? The patients get better and leave."
>
> > — Lisa Scottoline
> > *Every Fifteen Minutes*

2.    This civil rights suit, filed in response to Defendants' retaliation against Plaintiff for asserting his First and Fourteenth Amendment rights and for Defendants' depriving Plaintiff – and the the approximately 300 patients involuntarily committed by the Texas Civil Commitment Office ("TCCO") – of constitutional rights, challenges Defendants' implementation of Chapter 841 of the Texas Health and Safety Code in a way that involuntarily hospitalizes patients without a means for release and recovery.

3.     To date, not a single patient treated and hospitalized by the TCCO has been released from confinement or progressed in treatment beyond "Level 4." Effectively, the TCCO has involuntarily *hospitalized* and is *treating* hundreds of men under Chapter 841 of the Texas Health and Safety Code, but does not allow a process for the patients to progress in treatment and be released from hospitalization.

4.     The goal and purpose of medical treatment is recovery. Hospitalization is a last – and temporary – resort. The TCCO is treating to confine, rather than treating to cure. Without an effective means for release and recovery, the Defendants are punishing, rather than treating, Plaintiff and the 300-plus patients at the Texas Civil Commitment Center ("TCCC"). This is a violation of Plaintiff's – and the approximately 300 patients hospitalized by the TCCO – civil rights.

## II.
## PARTIES

5.     Plaintiff Jonathan Hitt is a patient at the Texas Civil Commitment Center in Littlefield, Texas. Plaintiff was civilly committed under Chapter 841 of the Texas Health and Safety Code after completing a prison sentence, and is thus subject to "treatment and supervision" by the TCCO. Since at least 2016, Defendants have failed in their obligation to provide Plaintiff "treatment," forcing Plaintiff to stagnate and regress in treatment for non-medical reasons. Defendants have set Plaintiff back years in treatment for filing a lawsuit challenging his involuntary confinement. They have forced him to undergo treatment modalities prohibited by statute. And they have allowed Plaintiff's treatment decisions to be made and overridden by non-medical professionals. As a result of Defendants' acts, Plaintiff has languished in institutional

3

care. He has lost employment. His relationships have suffered. And, above all, he has lost years of his life.

6.     **Plaintiff's Individual Claims.** Plaintiff is suing in his individual capacity for Defendants retaliating against him after he filed – and prosecuted – a civil rights claim against Defendants. As discussed below, Defendants forced Plaintiff to undergo unnecessary and prohibited treatment modalities as a result of him prosecuting a lawsuit against Defendants. They also forced Plaintiff to effectively redo years of treatment due to his assertion of his Sixth, Fourteenth, and First amendment rights. Essentially, Defendants have meted out Plaintiff's treatment and supervision punitively, rather than based upon sound medical and professional judgment.

7.     **Plaintiff's Claims as Class Representative.** Plaintiff is also suing Defendants as a class representative on behalf of the approximately 300 patients involuntarily hospitalized at the TCCC. The harms that have been inflicted upon Plaintiff – being forced to undergo treatment without a mechanism for recovery and release, being forced to redo treatment without cause, being subjected to treatment and housing decisions not indicated by sound professional judgment, being forced to undergo non-medically necessary and non-indicated treatment, and being subjected to hospitalization and placement moves that have prevented him from establishing lasting relationships and stability – are a direct result of Defendants operating an unconstitutional "treatment" program that seeks to confine and not cure. Defendants' actions and inactions with respect to Plaintiff are part of a systemic pattern of conduct that has caused, and continues to cause, irreparable harm to Plaintiff and the 300-plus

patients at the TCCC. Defendants have violated and acted with deliberate indifference to and beyond the bounds of professional judgment regarding Plaintiff's' constitutional rights, by failing to provide him with appropriate placements based upon sound professional judgment, by failing to provide him with appropriate treatment based upon sound professional judgment, by placing him in unnecessarily restrictive placements that do not meet his needs, by failing to ensure that he receives necessary and appropriate mental health services, by failing to provide case management and planning in accordance with his individual needs and professional standards, and by failing to develop and implement a treatment plan that will allow him to leave confinement and secure a safe and appropriate home in accordance with his needs, treatment goals, and professional standards.

8.      Defendant Gregg Abbott is the Governor of Texas, and is sued in his official capacity. He is responsible for ensuring that all Texas agencies comply with applicable federal and state law, and he oversees and directs the activities of the Texas Civil Commitment Office pursuant to the Texas Constitution Article IV Sections 1 and 10, and to the Chapter 420A of the Texas Government Code. His business address is Office of the Governor, State Insurance Building, 1100 San Jacinto, Austin, Texas 78701.

9.      Defendant Marsha McLane is the Executive Director for the Texas Civil Commitment Office and is being sued in both her official capacity and her individual capacity for compensatory and punitive damages. Defendant McLane can be served with process at 4616 West Howard Lane, Building 2, Ste. 350, Austin, Texas 78728.

10.     Defendant Daniel Rakes is a case manager for the Texas Civil Commitment Office and is being sued in both his official capacity and his individual capacity for compensatory and punitive damages. Defendant Rakes can be served with process at 4616 West Howard Lane, Building 2, Ste. 350, Austin, Texas 78728.

11.     Defendant Wellpath Recovery Solutions f/k/a Correct Care, LLC d/b/a CCRS of Texas, LLC, is the private entity that operated the Texas Civil Commitment Center. Defendant Wellpath Recovery Solutions can be served through its registered agent Corporate Creations Network, Inc., 2425 Loop South #200, Houston, Texas 77027.

12.     Defendant Brian Thomas was the Wellpath Recovery Solutions' facility administrator. Defendant Thomas can be served at 1283 Murfreesboro Pike, Ste. 500, Nashville, Tennessee, 37217.

13.     Defendant Edward Towns was the Wellpath Recovery Solutions' clinical director.  Defendant Towns can be served at 7722 Stanley Court, Joshua, Texas, 76058.

14.     Defendant Karen Harmon was employed by Wellpath Recovery Solutions as a clinical therapist. Defendant Harmon can be served at 1465 FM 54, Littlefield, Texas 79339.

### III.
### JURISDICTION & VENUE

15.     This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

16.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), as at least one defendant resides in the Western District, and at least one defendant was acting in her official capacity under color of state law.

# IV.
## CLASS ACTION ALLEGATIONS

17.     This action is properly maintained as a class action pursuant to Rule 23(a) and

23(b)(2) of the Federal Rules of Civil Procedure.

18.     The putative class ("Plaintiff Patients") is composed of all patients who are now,

and all those who will be, involuntarily committed at the TCCC. Although the patients

are, and will be, housed in different treatment tiers of the program, they are all

involuntarily committed in a system that does not adequately allow for patients to

complete treatment and leave confinement. In 2018, approximately 340 patients were

housed at the TCCC. This class is sufficiently numerous to make joinder impracticable.

19.     The questions of fact and law raised by the Plaintiff's class claims are common to

all patients housed at the TCCC, the Class he seeks to represent. Each patient at the

TCCC relies on Defendants for treatment services and is harmed or put at risk of harm

by the systemic and legal deficiencies of the TCCC and TCCO. The claims alleged by

Plaintiff and the resultant harms are typical of the claims of each member of the

putative class.

20.     Questions of fact common to the Class include:

    a.  Whether the Defendants fail to maintain the TCCC in a manner that
        allows the Plaintiff Patients the ability to graduate from institutional
        confinement when indicated by reasonable professional judgment;

    b.  Whether the Defendants use counter-productive and unreasonable
        treatment modalities in the Plaintiff Patients' treatment;

    c.  Whether the Defendants provide timely and appropriate treatment
        services to allow the Plaintiff Patients the ability to progress in and
        graduate from the TCCC as required by reasonable professional

judgment;

d. Whether the Defendants maintain a system that allows for the Plaintiff Patients' treatment decisions to be made by untrained professionals;

e. Whether the Defendants delegate treatment decisions to staff not trained, skilled, or certified to make such decisions;

f. Whether Defendants fail to provide Plaintiff Patients with appropriate treatment and the ability for progress necessary to ensure their well-being and to prevent them from deteriorating physically, psychologically, or otherwise while in custody as required by law and by reasonable professional judgment;

g. Whether the actions or inactions of Defendants comprise a pattern or practice of depriving Plaintiff Patients of the following, to which they are entitled under the laws of the State of Texas:

    i. the ability to "reside in the community,"

    ii. a "tiered program [that] provide[s] for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment;"

    iii. the "transfer . . . to less restrictive housing and supervision if the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community;"

    iv. treatment and housing decisions based upon reasonable professional judgment; and

h. Whether the foregoing actions or inactions of Defendants causes harm, or the risk of harm, to Plaintiff Patients.

21. Questions of law common to the Class include:

a. whether Defendants' actions and inactions violate the Plaintiff Patients' rights to be free from harm or the risk of harm while in state custody as required by the Substantive Due Process clause of the Fourteenth Amendment to the United States Constitution;

8

b. whether Defendants, through their actions and inactions, violate the Plaintiff Patients' rights to association under the First, Ninth and Fourteenth Amendments to the United States Constitution;

c. whether Defendants' actions and inactions violate the Plaintiff Patients' procedural rights, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, not to be deprived of a range of state-created legal entitlements;

d. whether Defendants' actions or inactions deprive the Plaintiff Patients of the right to be free from arbitrary detention as required by the Substantive Due Process clause of the Fourteenth Amendment and the Fifth Amendment; and

e. whether Defendants' actions or inactions deprive the Plaintiff Patients of the right to be free from cruel, unusual, and excessive punishment as required by the Eighth Amendment.

22. Plaintiff Hitt will fairly and adequately protect the interests of the Class.

23. Plaintiff's counsel is David Gonzalez, Kristin Etter, and Worth Carroll of Sumpter and Gonzalez LLP, in Austin, Texas.

24. These lawyers have experience litigating complex lawsuits in state and federal court, including experience in lawsuits involving institutional reform litigation. Plaintiff's attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class. Plaintiff's counsel therefore is well-suited to fairly and adequately represent the interests of the Class.

25. Defendants have acted or failed to act on grounds generally applicable to the Class, necessitating declaratory and injunctive relief for the Class. Plaintiff's counsel know of no conflicts among Class members.

**V.**
**FACTUAL ALLEGATIONS:**
**PLAINTIFF'S CLASS CLAIMS**

The Structure of the TCCC and The TCCO

26.     In 2015, the Texas Legislature created a new state agency, the Texas Civil

Commitment Office, with the responsibility for treatment and supervision of people

deemed "sexually violent predators."" The Legislature required the TCCO to develop a

tiered program of supervision and treatment that provides a seamless transition from a

total confinement facility to less restrictive housing and supervision and eventual

release from civil commitment, based on the person's behavior and progress in

treatment.

27.     Under the statute, the TCCO should transfer a committed person to less

restrictive housing and supervision if the transfer is in the best interests of the person

and conditions can be imposed that adequately protect the community.

28.     The TCCO operates the TCCC, which is a former prison that the TCCO operates

as a secure treatment facility, to house, supervise, and treat civilly committed persons.

29.     Although deemed a treatment center by the TCCO, the TCCC possesses all the

trappings of a prison: it is surrounded by barbed-wire, contains metal bunks and toilets,

and it is organized by the familiar prison "pod" system.

30.     Defendant Wellpath is a private entity that contracts with the TCCO to operate

the TCCC. Defendant Wellpath also oversees the treatment of patients at the facility.

31.     Defendant Wellpath employs licensed therapists, among other employees, to

provide treatment and supervision of the patients in its care. Defendants Thomas,

Towns, and Harmon purport to provide treatment and care to the patients at the TCCC pursuant to Defendant Wellpath's contract with the TCCO.

32.     Although Defendant Wellpath, and its treatment-provider employees, are tasked with the treatment, supervision, and care of the patients at the TCCC, Defendant McLane, among other officials within the TCCO, ultimately is the final arbiter of treatment and supervision decisions at the TCCC – even though McLane has no training, education, skill, or experience related to providing therapy and treatment to people with "behavioral abnormalities" that predispose the person to commit sexually violent offenses." That is, although a trained and skilled Wellpath provider may determine that a patient is eligible to move treatment tiers consistent with reasonable professional judgment, Defendant McLane has the authority to overturn – and has actually overturned – treatment and supervision decisions of the professionals hired by the State.

        The Providers at the TCCC

33.     The TCCO employs private providers to implement the sex offender treatment prescribed by the legislature. Currently, Defendant Wellpath is the treatment provider operating the TCCC at Littlefield.

34.     Various written rules and policies at the TCCC require the TCCO (and Wellpath) to employ "Licensed or Affiliate Sex Offender Treatment Providers" and follow the "Council on Sex Offender Treatment standards" when treating patients at the TCCC.

35.     Indeed, because the TCCC is a treatment center (rather than a prison), the residents of the TCCC are patients (and not inmates), and the patients are being

hospitalized for treatment (and not punishment), the TCCO and Wellpath (as well as their employee-Defendants) are required to use reasonable professional judgment based upon the prevailing standard of care in implementing patients' treatment at the TCCC.

36.     Regardless of their requirement to base treatment decisions on reasonable professional judgment, Defendants regularly make treatment decisions based upon criteria not recognized as indicators of treatment progression/regression, and by parties – including Defendant McLane – who are unqualified to make treatment decisions.

        The Treatment Tiers

37.     Within the TCCC, the TCCO operates a 4-tiered system: 1 being the lowest with the least amount of restrictions, and 4 being the highest with the highest degree of relative freedom.

38.     Within each treatment tier, patients have certain degrees of freedoms, treatment modalities, and responsibilities. For instance, in Treatment Tier 4, patients have access to cell phones and can be employed, as they are purportedly working towards eventual release and freedom. In Treatment Tier 2, however, patients may not work, are prohibited from possessing cell phones, and have significantly restricted movement throughout the facility.

39.     In theory, movement between treatment tiers is based upon treatment providers determining that certain treatment goals and indicators are met that indicate a patient's progress in treatment. In fact, the legislature has mandated the TCCO's treatment providers to move patients to less restrictive housing when "the transfer is in the best

interests of the person and conditions can be imposed that adequately protect the community."

40.     In practice, however, a patient's movement between treatment tiers is not based upon therapeutic markers, reasonable professional judgment, and the standard set forth by the legislature, but instead is based upon arbitrary decisions of TCCO officials – namely those of Defendants McLane, Rakes, and Wellpath.

41.     That is, rather than basing treatment decisions related to movement between treatment tiers on reasonable professional judgment and the "best interests of the [patient]," treatment tier movement is often based upon Defendant McLane's *belief* about a patient's progress that is unsupported by prevailing professional judgment.

42.     Further, although the Defendants have a duty to progress patients to less restrictive housing assignments (and treatment tiers) based upon reasonable professional judgment and the "best interest of the" patient standard set forth by the legislature, the Defendants instead make treatment tier movement determinations (and, thus, treatment determinations) based upon the arbitrary decisions of unqualified professionals – namely, those of McLane.

Release to the Community

43.     Multiple provisions of the various statutes and rules that comprise the TCCO framework envision that patients will one day be released from confinement and into the community. For instance, section 841.0831 of the Texas Health and Safety Code provides that "[t]he tiered program must provide for the seamless transition of a committed person from a total confinement facility to less restrictive housing and

13

supervision and *eventually to release from civil commitment*, based on the person's behavior and progress in treatment." Likewise, the TCCO's written policies provide that a patient may transition to "independent living in the community" if he meets all treatment goals and "ma[kes] all expected changes."

44.     And above all else, it is axiomatic that the purpose and goal of any treatment is to rehabilitate and restore a patient: which, in the context of patients at the TCCC, would include a return to a life in the community outside of the institutional restrictions and restraints imposed by the TCCC.

45.     Regardless of the apparent intent of the legislature to have patients at the TCCC graduate from institutional care to independent living in the community, there has not been a single patient at the TCCC that has been released into the community. Rather, when a patient has met treatment goals as dictated by his treatment providers, TCCO and Wellpath officials add and amend treatment modalities to prevent patients from graduating from the program into independent living within the community. That is, although the intent of the legislature is for TCCC patients to one day resume life in the community, the actual policy – in practice – of the TCCO and Wellpath is to house patients indefinitely at the TCCC without hope of completing treatment.

        The TCCC: a Life Sentence in Practice

46.     Regardless of the intent of the legislature to rehabilitate patients and move them into independent community living, not a single TCCC patient has progressed in treatment out of institutional confinement.

47.     Plaintiff is a model patient.

14

48.     He began outpatient sex offender treatment in Austin, Texas, in 2010 under

Licensed Sex Offender Treatment Provider-Supervisor (LSOTP-S) Dr. Shelley Graham.

49.     For over five years, Plaintiff worked through Dr. Matthew Ferrara's workbook,

Texas' Outpatient Sexually Violent Predator Treatment Program, the Lead Workbook,

and the Good Life. Ultimately, Plaintiff completed Dr. Ferrara's curriculum in 2015, and

advanced to aftercare curriculum where he no longer worked on workbook

assignments but instead worked on developing community involvement skills and

healthy relationships.

50.     In 2015, before he was confined at the TCCC, Plaintiff had been granted the

ability to drive a car, have a job, and reside in his own home on his own property. In

fact, Sona Nast, one of Plaintiff's former treatment providers, testified that Plaintiff was

"on the verge" of being released from civil commitment in 2015.

51.     After he was placed at the TCCC in 2016 (but before he filed his first lawsuit

against McLane and Wellpath in 2017), Plaintiff began working through the Wellpath

curricula for Treatment Tier 4, which – among other things – addressed the reasons for

Plaintiff's transfer to the TCCC.

52.     Through his progress in treatment, Plaintiff's clinical  therapist, ASOTP Holly

Waddell, recommended that Plaintiff return to his home in Austin, Texas, and to the

independent living provided for in Treatment Tier 5, as Plaintiff had successfully  dealt

with the issues leading to his transfer to the TCCC.

53.     Plaintiff has successfully worked through the remedial Treatment Tier 2

treatment coursework.

54.     He has successfully completed the Treatment Tier 3 coursework.

55.     And, as referenced by ASOTP Waddell's assessment, Plaintiff successfully completed Treatment Tier 4's treatment modules.

56.     Yet, despite his progress in treatment and for non-therapeutic reasons, Plaintiff is still languishing at the TCCC – despite the therapeutic indication that he should progress through treatment.

57.     LSOTP Richard Johnston (Plaintiff's former clinical therapist and Wellpath employee) candidly told Plaintiff in late 2018 why he had not progressed from Treatment Tier 2 despite his progress in treatment and despite the fact that he "did not belong in Tier 2:" Defendant McLane would deny any request by Wellpath therapists to progress Plaintiff to Treatment Tier 3 or 4. This revelation was nothing new: Defendant McLane had previously denied advocacy by ASOTP Laura Locke to move Plaintiff from Treatment Tier 2, despite her reasonable professional judgment being that Plaintiff should progress in treatment.

58.     Plaintiff's experience is not isolated: LSOTP Eric Bowyer (former Wellpath employee) stated that Defendant McLane regularly overruled his own clinical recommendations and that his recommendations to promote clients were more-times-than-not ignored by Defendant McLane.

59.     Rather than base a patient's progress on treatment indicators and the best interest standard set by the legislature (as reasonable professional judgment requires), Defendants instead base movement among treatment tiers (and, ultimately, the decision to graduate a patient into independent community living) on punitive measures and

antiquated and highly suspect and disfavored tools (the polygraph and penile plethysmograph[1]).

60.    In Plaintiff's case (which is emblematic of the unconstitutional system in which hundreds of men are stuck at the TCCC in Littlefield), Defendants are operating – in the words of LSOTP Bowyer – a  "therapeutic hamster wheel," where patients are forced to retread the same ground and therapeutic modalities for years without hope of actual progress.

<u>Defendants are causing the Plaintiff Patients Harm</u>

61.    Plaintiff Patients are in the care of the Defendants in order for Plaintiffs to undergo treatment for the purported mental abnormality that caused their confinement.

62.    However, they are disallowed from progressing in treatment due to the uncredentialed and punitive whims of Defendant McLane.

63.    Plaintiff Patients were placed into custody at the TCCC because a determination was made that they required treatment and supervision to remedy a behavioral abnormality. Having involuntarily committed the Plaintiff Patients into the TCCC, Defendants have a constitutional and statutory obligation to provide them appropriate treatment backed by reasonable professional judgment, as well as to ensure their safety and well being. In furtherance of that obligation, Defendants have an obligation to provide the Plaintiff Patients a mechanism to move through the therapeutic tiers and – eventually – graduate to independent community living.

---

[1] As discussed below, Defendants subjected Plaintiff to a polygraph and a penile plethysmograph (which were conducted without authorization by the legislature), which they cite as a basis for Plaintiff's demotion in treatment.

64.     Defendants harmed the Plaintiff Patients by operating a therapeutic system without an adequate means to progress. As a result of Defendants' actions, the Plaintiff Patients are languishing in institutional care without any hope of – or means to – actually progress as per the intention of the legislature.

65.     Further compounding this hopelessness, Defendants inflict emotional harm on the Plaintiff Patients by arbitrarily demoting patients from certain tiers without the appropriate therapeutic basis for doing so and for reasons unsupported by reasonable professional judgment.

66.     They also harm the Plaintiff Patients by subjecting them to the highly subjective, disfavored, and disallowed polygraphs and penile plethysmographs, which Defendants use as a basis to demote and stagnate patients.

67.     And above all, the Defendants exact irreparable emotional harm on the Plaintiff Patients by hospitalizing them in a facility without an adequate means to graduate from institutionalization. That is, because Defendants have effectively foreclosed from the Plaintiff Patients the opportunity to be released, they cannot effectively engage in treatment, cannot develop lasting relationships in the free world, and have been robbed of their ability to create a meaningful, post-incarceration existence.

68.     If Plaintiff Hitt has not – and cannot – make it out of the TCCC, no one will. Rather, Hitt and the other Plaintiff Patients have been left to die at the TCCC, and they will without Court intervention. And perhaps worse, the Plaintiff Patients will languish in institutionalized purgatory for years before their death, all the while being stuck on a "therapeutic hamster wheel" controlled by non-professional staff.

# VI.
## FACTUAL ALLEGATIONS:
## PLAINTIFF'S INDIVIDUAL CLAIMS

69.     On April 5, 2017, Plaintiff filed a *pro se* complaint in the Western District seeking injunctive relief against the Texas Civil Commitment Office. The gravamen of his constitutional complaints were constitutional violations arising from his involuntary inpatient commitment without a hearing. He prevailed at trial before Judge Sparks on this procedural due process issue.

70.     Prior to filing his lawsuit, Plaintiff spent 10 months in inpatient treatment with clinical therapists addressing the reason for his reduction from Treatment Tier 5 treatment (outpatient) to Treatment Tier 4 treatment (inpatient).  After years and years of being alone, Mr. Hitt simply started to date a woman - a woman his own age, a woman he introduced to his treatment provider, and a woman that he had maintained a friendship with for some time prior to developing a healthy, romantic interest.

71.     Under the civil commitment law, the purpose of treatment is not to eliminate or prevent sexual attraction to other people; it is to eliminate or prevent abnormal, unlawful, and predatory sexual behavior resulting from a "behavioral abnormality." After completing a 10 year prison sentence for an offense committed in 1997 - 24 years ago - it is not a "behavioral abnormality" to have a romantic relationship or partnership as a middle-aged adult. Quite the contrary, it could be more indicative of a "behavioral abnormality" if Mr. Hitt or others similarly situated expressed no interest in any healthy, equal, romantic relationships after completion of their prison sentences.

72.     Mr. Hitt's relationship was neither abnormal nor predatory. The conduct at issue was not illegal. Mr. Hitt did not break any law. Mr. Hitt did not commit a new offense.

73.     Nevertheless, Mr. Hitt spent 10 months with a Treatment Tier 4 clinical therapist addressing this one dating relationship. Mr. Hitt received treatment in an individual setting. Mr. Hitt received treatment in a group setting. Mr. Hitt worked with all members of the treatment team. After 10 months in treatment, Mr. Hitt's clinical therapist recommended that he return to Treatment Tier 5 (outpatient).

74.     Mr. Hitt should have returned to outpatient treatment by December 2016. At present, four years later, he remains in inpatient treatment.

75.     Like insanity or competency, the clinical diagnosis that triggers continuing civil commitment is a legal standard that requires forensic psychological, medical expertise. Under the Texas Health and Safety Code, the medical assessment is whether a person suffers from "a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." A forensic expert makes a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques to aid the department in its assessment.

76.     However, the Texas Legislature created limits to what "other appropriate assessments and techniques" can be used.  Due to the "horrible mismanagement" of the treatment program, the Texas Legislature called for investigations by the State Auditor's Office, Texas Rangers, Health and Human Services Commission's Office of Inspector General, and the Travis County Public Integrity Unit.  As Senator John Whitmire noted in his Bill Analysis, a significant finding of the State Auditor's Office

was that the treatment program did not plan for treatment services.  The Legislature enacted sweeping changes of the treatment program during the 84th Legislative Session.

77.    One of the changes enacted into law on June 17, 2015 was removal of polygraph and plethysmograph as part of a treatment plan.

78.    In direct contradiction of the new legislative mandate, Mr. Hitt was required to participate in a polygraph examination on February 12, 2016 as part of his treatment.

79.    In direct contradiction of the new legislative mandate, Mr. Hitt was required to participate in a plethysmograph on January 9, 2017 as part of his treatment.

80.    In direct contradiction of the new legislative mandate, Mr. Hitt was required to participate in a plethysmograph on December 29, 2017 as part of his treatment.

81.    Despite completing 10 additional months of treatment, and despite the recommendation by the clinical director to return to Treatment Tier 5 (outpatient), Mr. Hitt was not released from Treatment Tier 4 inpatient treatment in January 2017. He was not released in February. He was not released in March.

82.    There is a spectrum of medical treatment for physical illness. Few ailments require hospitalization; even fewer require hospitalization for more than several days. Similarly, there is a spectrum of medical treatment for mental health conditions. Very few conditions require involuntary hospitalization due to an immediate danger; even fewer require involuntary hospitalization for more than several days. Importantly, hospitalization in either scenario is meant as a short-term, immediate intervention for the most critical and intensive episodes. When health care can be provided in a least

restrictive and more cost effective setting, it is. And should a change in condition

warrant a return to the hospital, that decision is made. Health care and treatment

decisions are dynamic.  Patients know the course of their treatment - and when it will

end. Whether it is chemotherapy or physical therapy or medication management,

people that are sick do not live the rest of their lives in a hospital. Mr. Hitt and others

similarly situated patients in the Texas Civil Commitment treatment program do not

receive anything like the dynamic care that every other health care system provides.

The difference between Treatment Tier 5 (outpatient) and Treatment Tier 4 (inpatient) is

so great that it results in a static commitment.

83.     Criminal justice sentences are static. Prisoners know when their sentence will

end.  And with a final judgment comes significant mental health benefits. Finality of

judgment allows hope. Finality allows planning. Finality incentivizes good behavior

health and rehabilitation. Mr. Hitt is not a prisoner yet is afforded significantly less

quality of life than those serving punishment in prison.

84.     Mr. Hitt did not have funds to hire an independent forensic expert. With no

ability to hire counsel, with no right to appointed counsel, and with no other way to

remedy his continued, indefinite, standardless, and static involuntary detention, Mr.

Hitt filed suit in federal court on April 5, 2017.

85.     Because he was an indigent *pro se* litigant, it took several months for his federal

suit to be served. In July 2017, Defendant McLane received Mr. Hitt's lawsuit.

Defendants McLane and Towns, along with Ms. Waddell and TCCO case managers,

held a staff meeting to discuss Plaintiff's lawsuit. Ms. Waddell later reported to Plaintiff

that, at the meeting, Defendant McLane "personally expressed outrage" over Plaintiff's lawsuit and said it showed Plaintiff had not taken responsibility for his TCCC transfer.

86.      In August 2017, Defendant Towns confronted Plaintiff during his group therapy about why Plaintiff was transferred to TCCC; during this questioning, Towns took out his cellphone and stated "Let's see what Marsha is doing." Plaintiff informed Towns that he did not want to discuss the substance of his lawsuit without his attorney present. Plaintiff also informed Towns that, prior to filing his lawsuit, Plaintiff had discussed the reasons behind his TCCC transfer with Ms. Waddell and the therapeutic issues were resolved such that there was no need to address them again - let alone with Defendant McLane. Although Defendant McLane has never been part of any clinical treatment of Mr. Hitt - and certainly not in the 17 months prior to the lawsuit being filed - Defendant Towns called her cellphone so she could listen to Mr. Hitt's group treatment sessions. And while Mr. Hitt already completed treatment for 10 months and received a recommendation for return to Treatment Tier 5 (outpatient) by December 2016, Mr. Hitt's lawsuit now resulted in interrogation by different staff members for matters long since resolved in treatment.

87.      From that point further, Mr. Hitt's vindicated request for judicial intervention was used to detain him indefinitely.  As he was being questioned about his lawsuit, Mr. Hitt declined to waive litigation privilege.

88.      Mr. Hitt's lawsuit and his refusal to discuss the litigation resulted in loss of his "therapeutic progress." Acting outside the scope of her employment and for no clinical reason of addressing a "behavioral abnormality," Defendant McLane instructed

Defendant Towns and Defendant Rakes to revoke Mr. Hitt to a Treatment Tier 2. This unilateral decision would add years to Mr. Hitt's return to the community - and he still remains involuntarily committed.

**VII.**
**INDIVIDUAL CAUSES OF ACTION:**
**PLAINTIFF HITT**

**CAUSE OF ACTION NO. 1:**
**RETALIATION - SEPTEMBER 2017**

**ALL DEFENDANTS**

89.     Each of the foregoing allegations is incorporated as if fully set forth herein.

90.     Through his work in therapy, Plaintiff was recommended to be returned home to after 10 months of hospitalization.

91.     By filing a federal lawsuit, Plaintiff engaged in the following constitutionally protected activities: exercising the right of access to the courts, petitioning the Government for a redress of grievances under the First Amendment, constitutionally protected activity of the free exercise of speech about his grievances under the First Amendment.

92.     By declining to speak about his litigation to Defendants, Plaintiff engaged in constitutionally protected activity of maintaining his right to counsel under the Sixth Amendment and refusing to be compelled to speak about his grievances under the First Amendment.

93.     Defendants intended to retaliate against Plaintiff for exercising these rights.

94.     On September 18, 2017, Plaintiff was demoted two full treatment tier levels in his

housing and work privileges in retaliation for the filing of his lawsuit and his refusal to

discuss it in therapeutic settings.

95.     These adverse actions would not have occurred but for the retaliatory motive,

and there is direct evidence of this motivation. On August 7, 2017 Plaintiff was

informed by departing clinical therapist Holly Waddell that Plaintiff would have been

returned to Treatment Tier 5 had he not filed suit.

96.     The retaliatory motive persisted and persists.  On October 2, 2018, LSOTP

Richard Johnston, Plaintiff's fourth Wellpath clinical therapist and acting Wellpath lead

therapist, stated that it would be useless for him to advocate for advancement from Tier

2 because Defendant McLane would simply deny it.  Mr. Johnston further explained

that Affiliate Sex Offender Treatment Provider (ASOTP) Laura Locke, Mr. Hitt's sixth

Welipath clinical therapist, had run into the same impasse with Defendant McLane

when she had advocated for his advancement in early 2018.

97.     Defendants McLane and Rakes retaliated against Plaintiff in both their official

capacity and their individual capacity.


**CAUSE OF ACTION NO. 2:**
**RETALIATION - DECEMBER 2017**

**ALL DEFENDANTS**

98.     Each of the foregoing allegations is incorporated as if fully set forth herein.

99.     Despite the retaliatory reduction to Treatment Tier 2, Plaintiff continued his

work in therapy after loss of his privileges. In October 2017, Plaintiff was restored to

Treatment Tier 4 therapy after only three weeks at Treatment Tier 2. This rapid return to Level 4 illustrated that the original reduction to Treatment Tier 2 was punitive and not based upon therapeutic need.

100.     Despite multiple therapist recommendations and having extensively and successfully received treatment on the issues that lead to his loss of Treatment Tier 5 outpatient treatment, Defendants Towns, Rakes, and Harmon withheld Plaintiff's therapeutic progress that would return him to Treatment Tier 5. In December 2017, Plaintiff was again demoted two levels to Treatment Tier 2 for the same exact reason that led to the September demotion.

101.     Mr. Hitt had no other behavioral infractions, sexual behavior, or predatory behavior that would give rise to any loss of therapeutic progress.

102.     By filing a federal lawsuit, Plaintiff engaged in the following constitutionally protected activities: exercising the right of access to the courts, petitioning the Government for a redress of grievances under the First Amendment, constitutionally protected activity of the free exercise of speech about his grievances under the First Amendment.

103.     By declining to speak about his litigation to Defendants, Plaintiff engaged in constitutionally protected activity of maintaining his right to counsel under the Sixth Amendment and refusing to be compelled to speak about his grievances under the First Amendment.

104.     Defendants intended to retaliate against Plaintiff for exercising these rights. At a November 2017 group session, Defendant Harmon questioned Plaintiff about his TCCC

26

transfer, and when Plaintiff refused to discuss it, Harmon alerted Towns via email. In December 2017, Plaintiff states that Towns asked Plaintiff in a public space about Plaintiff's failed February 2016 polygraph test, and also threatened Plaintiff with "serious consequences" if he failed to discuss the issues behind his TCCC transfer. Soon thereafter, Plaintiff was demoted from Treatment Tier 4 to Treatment Tier 2 because he would not discuss the factual allegations behind his civil-rights lawsuit.

105.    Plaintiff suffered retaliatory adverse acts: Defendants did not promote Plaintiff to Treatment Tier 5, and Defendants demoted Plaintiff from Treatment Treatment Tier 4 to Treatment Treatment Tier 2 without cause or a hearing.

106.    These adverse actions would not have occurred but for the retaliatory motive, and there is direct evidence of this motivation. On August 7, 2017 Plaintiff was informed by departing clinical therapist Holly Waddell that Plaintiff would have been returned toTreatment Tier 5 had he not filed suit. Given the subsequent punishment of loss of two treatment tiers, this sentiment continued at TCCC throughout the Fall of 2017.

107.    The retaliatory motive persisted and persists.  On October 2, 2018, LSOTP Richard Johnston, Plaintiff's fourth Wellpath clinical therapist and acting Wellpath lead therapist, stated that it would be useless for him to advocate for advancement from Tier 2 because Defendant McLane would simply deny it.  Mr. Johnston further explained that Affiliate Sex Offender Treatment Provider (ASOTP) Laura Locke, Mr. Hitt's sixth Welipath clinical therapist, had run into the same impasse with Defendant McLane when she had advocated for his advancement in early 2018.

108.    Defendants McLane and Rakes retaliated against Plaintiff in both their official

capacity and their individual capacity.


## CAUSE OF ACTION NO. 3:
## RETALIATION

## DEFENDANT TOWNS

109.    Each of the foregoing allegations is incorporated as if fully set forth herein.

110.    By filing a federal lawsuit, Plaintiff engaged in the following constitutionally

protected activities: exercising the right of access to the courts, petitioning the

Government for a redress of grievances under the First Amendment, constitutionally

protected activity of the free exercise of speech about his grievances under the First

Amendment.

111.    By declining to speak about his litigation, Plaintiff engaged in constitutionally

protected activity of maintaining his right to counsel under the Sixth Amendment and

refusing to be compelled to speak about his grievances under the First Amendment.

112.    Defendant intended to retaliate against Plaintiff for exercising these rights.

113.    In retaliation for Plaintiff's constitutionally protective activities, on or about

October 11, 2017 Defendant Towns requested that Plaintiff's clinical therapist to alter a

finalized Progress Note documenting his progress in treatment to instead reflect that

Plaintiff was regressing in treatment.

114.    In retaliation for Plaintiff's constitutionally protective activities, on or about

December 2017 Defendant Towns entered a false narrative in the Chronological

Database (CSS) concerning the circumstances surrounding Plaintiff's employment termination.

115.    Plaintiff suffered harm by both acts, resulting in additional and unnecessary and prolonged involuntary inpatient treatment.

116.    These adverse actions would not have occurred but for the retaliatory motive, and there is direct evidence of this motivation. On August 7, 2017 Plaintiff was informed by departing clinical therapist Holly Waddell that Plaintiff would have been returned to Treatment Tier 5 had he not filed suit.

## CAUSE OF ACTION NO. 4:
## TITLE VII
## EMPLOYMENT RETALIATION

### ALL DEFENDANTS

117.    Each of the foregoing allegations is incorporated as if fully set forth herein.

118.    Plaintiff was employed by the Texas Civil Commitment Center.

119.    By filing a federal lawsuit, Plaintiff engaged in the following constitutionally protected activities: exercising the right of access to the courts, petitioning the Government for a redress of grievances under the First Amendment, constitutionally protected activity of the free exercise of speech about his grievances under the First Amendment.

120.    By declining to speak about his litigation, Plaintiff engaged in constitutionally protected activity of maintaining his right to counsel under the Sixth Amendment and refusing to be compelled to speak about his grievances under the First Amendment.

121.    Defendants intended to retaliate against Plaintiff for exercising these rights.

122.    Defendants eliminated Plaintiff's employment.

123.    Defendants' decision to eliminate employment was on account of his protected activity.

124.    These adverse actions would not have occurred but for the retaliatory motive, and there is direct evidence of this motivation as articulated above.

125.    Plaintiff has not only suffered a loss of income, but also the ability to save money that would allow him to return to Treatment Tier 5.


**CAUSE OF ACTION NO. 5:**
**FOURTEENTH AMENDMENT**
**PROCEDURAL DUE PROCESS**

**ALL DEFENDANTS**

126.    Each of the foregoing allegations is incorporated as if fully set forth herein.

127.    The foregoing actions and inactions of all Defendants have resulted and are continuing to result in the deprivation of the following state law entitlements to which each Plaintiff Patient has a constitutionally protected interest:

   a.  **Tex. Health and Safety Code § 841.0834:** The right to transfer to less restrictive housing and supervision if the transfer is in the best interest of the patient and conditions can be imposed that adequately protect the community.

   b.  **Tex. Health and Safety Code § 841.0834:** The right for treatment, supervision, and housing determinations to be made in accordance with reasonable professional judgment and based upon the standards imposed by the legislature.

   c.  **Tex. Health and Safety Code §  841.121:** The right for the TCCO to appropriately consider, based upon the reasonable professional judgment

30

of providers in the field, whether a patient's behavioral abnormality has changed to the extent the patient is no longer likely to engage in an act of predatory violence.

d. **Tex. Health and Safety Code § 841.0831:** The right to treatment in a tiered program that provides for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment.

e. **TCCO Policy 4.1.**

f. **Wellpath Policies 300-01, 500-02.**

## CAUSE OF ACTION NO. 6:
## FOURTEENTH AMENDMENT
## SUBSTANTIVE DUE PROCESS

### ALL DEFENDANTS

128.    Each of the foregoing allegations is incorporated as if fully set forth herein.

129.    State officials assume an affirmative duty under the Fourteenth Amendment to the United States Constitution to provide patients involuntarily committed conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and training as may be required by these interests.

130.    The foregoing actions and inactions of all Defendants constitute a failure to meet their affirmative duty to provide conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and required training to benefit Plaintiff, which is a substantial factor leading to and proximate cause of the violation of the constitutionally protected liberty and privacy interests of Plaintiff.

131.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights and liberty and privacy interests of Plaintiff. As a result, Plaintiff has been and is at continuing risk of being deprived of the substantive due process rights conferred upon him by the Fourteenth Amendment to the United States Constitution.

132.    These Substantive Due Process Rights include, but are not limited to:

   a.   The right to protection from unnecessary harm while in government custody;

   b.   the right to a living environment that protects a patient's physical, mental, and emotional safety while in government custody;

   c.   the right to treatment and care consistent with the purpose of the assumption of custody by the TCCC;

   d.   the right to services necessary to prevent patients from deteriorating while in government custody, including but not limited to the right to safe and secure housing, effective and professionally sound treatment, appropriate planning and services directed toward ensuring that the patient can graduate from confinement and continue treatment in a non-carceral environment, and adequate psychiatric and psychological services;

   e.   the right not to be maintained in custody longer than is necessary to accomplish the purposes to be served by taking the patient into custody;

   f.   the right to receive care, treatment, and services determined and provided through the exercise of accepted professional judgment; and

   g.   the right to be placed in the least restrictive placement according to a foster child's needs.

133.    Defendants have violated Plaintiff's substantive due process rights by punishing him through an arbitrary demotion in his treatment tier level, and by providing inadequate sex-offender treatment.

## CAUSE OF ACTION NO. 7:
## FIRST, NINTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### ALL DEFENDANTS

134.    Each of the foregoing allegations is incorporated as if fully set forth herein.

135.    The foregoing actions and inactions of all Defendants amount to a policy, pattern, practice, or custom of failure to exercise professional judgment and of deliberate indifference to Plaintiff and the Plaintiff Patients' constitutional rights, and are the cause of the violation of such rights.

136.    As a result of Defendants' conduct, Plaintiff and the Plaintiff Patients have been and are at further risk of being harmed and deprived of their liberty interests, privacy interests, and associational rights of a free person and in a free society, conferred on them by the First, Ninth, and Fourteenth Amendments to the United States Constitution.

## CAUSE OF ACTION NO. 8:
## EIGHTH AMENDMENT
## INADEQUATE MEDICAL CARE AND LACK OF THERAPEUTIC TREATMENT

### ALL DEFENDANTS

137.    Each of the foregoing allegations is incorporated as if fully set forth herein.

138.    Plaintiff and the Plaintiff Patients have been, and continue to be, exposed to a substantial risk of serious harm by indefinite involuntary confinement.

139.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights Plaintiff and the Plaintiff Patients. As a result, Plaintiff and the Plaintiff Patients have been and are at continuing risk of being deprived of their right to be free from excessive, cruel, and unusual punishment as conferred upon them by the Eighth and Fourteenth Amendment to the United States Constitution.

140.    Defendants have violated the Plaintiff Patients' constitutional rights in the following ways:

      a.  by allowing the Plaintiff Patients' therapeutic and housing decisions to be based upon punishment, rather than treatment, decisions;

      b.  by subjecting Plaintiff Patients to care by unqualified treatment providers;

      c.  by subjecting Plaintiff Patients to unlawful treatment modalities; and

      d.  by indefinitely confining Plaintiff Patients without regard to reasonable professional judgment and the prevailing medical standards.


**CAUSE OF ACTION NO. 9:**
**EIGHTH AMENDMENT**
**CONFINEMENT CONDITIONS**

**ALL DEFENDANTS**

141.    Each of the foregoing allegations is incorporated as if fully set forth herein.

142.    Plaintiff has been, and continues to be, exposed to a substantial risk of serious harm by indefinite involuntary confinement.

143.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights of Plaintiff. As a result, Plaintiff has been and continues to be at risk of being deprived of his right to be free from excessive, cruel, and unusual punishment as conferred upon them by the Eighth and Fourteenth Amendment to the United States Constitution.

144.    Defendants have violated Plaintiff's constitutional rights by involuntarily confining the Plaintiff in conditions that have resulted in an extreme deprivation of the minimal measure of life's necessities, including:

> a.   the opportunity for employment;
>
> b.   being free of unnecessarily restrictive housing;
>
> c.   the opportunity for familial, platonic, and romantic relationships;
>
> d.   the opportunity of medical treatment of choice; and
>
> e.   ready access to the Courts, among other things.

145.    Plaintiff was provided with inadequate therapeutic treatment because Defendant Towns was not a licensed sex-offender treatment provider (LSOTP) and Defendant Wellpath therapists were only associate sex-offender treatment providers (ASOTP).

**VIII.**
**CLASS ACTION CAUSES OF ACTION**


**CLASS ACTION CAUSE OF ACTION NO. 1:**
**FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**

**ALL DEFENDANTS**

146.    Each of the foregoing allegations is incorporated as if fully set forth herein.

147.    State officials assume an affirmative duty under the Fourteenth Amendment to the United States Constitution to provide patients involuntarily committed conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and training as may be required by these interests.

148.    The foregoing actions and inactions of all Defendants constitute a failure to meet their affirmative duty to provide conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and required training to benefit Plaintiff and the Plaintiff Patients, which is a substantial factor leading to and proximate cause of the violation of the constitutionally protected liberty and privacy interests of Plaintiff and Plaintiff Patients.

149.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights and liberty and privacy interests of Plaintiff and the Plaintiff Patients. As a result, Plaintiff and the Plaintiff Patients have been and are at continuing risk of being deprived of the

substantive due process rights conferred upon them by the Fourteenth Amendment to the United States Constitution.

150.   These Substantive Due Process Rights include, but are not limited to:

    a.   The right to protection from unnecessary harm while in government custody;

    b.   the right to a living environment that protects a patient's physical, mental, and emotional safety while in government custody;

    c.   the right to treatment and care consistent with the purpose of the assumption of custody by the TCCC;

    d.   the right to services necessary to prevent patients from deteriorating while in government custody, including but not limited to the right to safe and secure housing, effective and professionally sound treatment, appropriate planning and services directed toward ensuring that the patient can graduate from confinement and continue treatment in a non-carceral environment, and adequate psychiatric and psychological services;

    e.   the right not to be maintained in custody longer than is necessary to accomplish the purposes to be served by taking the patient into custody;

    f.   the right to receive care, treatment, and services determined and provided through the exercise of accepted professional judgment; and

    g.   the right to be placed in the least restrictive placement according to a foster child's needs.

**CLASS ACTION CAUSE OF ACTION NO. 2**
**FIRST, NINTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**ALL DEFENDANTS**

151.   Each of the foregoing allegations is incorporated as if fully set forth herein.

152.    The foregoing actions and inactions of all Defendants amount to a policy,

pattern, practice, or custom of failure to exercise professional judgment and of

deliberate indifference to Plaintiff and the Plaintiff Patients' constitutional rights, and

are the cause of the violation of such rights.

153.    As a result of Defendants' conduct, Plaintiff and the Plaintiff Patients have been

and are at further risk of being harmed and deprived of their liberty interests, privacy

interests, and associational rights of a free person and in a free society, conferred on

them by the First, Ninth, and Fourteenth Amendments to the United States

Constitution.

## CLASS ACTION CAUSE OF ACTION NO. 3
## PROCEDURAL DUE PROCESS

### ALL DEFENDANTS

154.    Each of the foregoing allegations is incorporated as if fully set forth herein.

155.    The foregoing actions and inactions of all Defendants have resulted and are

continuing to result in the deprivation of the following state law entitlements to which

each Plaintiff Patient has a constitutionally protected interest:

a.   **Tex. Health and Safety Code § 841.0834:** The right to transfer to less
restrictive housing and supervision if the transfer is in the best interest of
the patient and conditions can be imposed that adequately protect the
community.

b.   **Tex. Health and Safety Code § 841.0834:** The right for treatment,
supervision, and housing determinations to be made in accordance with
reasonable professional judgment and based upon the standards imposed
by the legislature.

c.   **Tex. Health and Safety Code §  841.121:** The right for the TCCO to
appropriately consider, based upon the reasonable professional judgment

of providers in the field, whether a patient's behavioral abnormality has changed to the extent the patient is no longer likely to engage in an act of predatory violence.

d. **Tex. Health and Safety Code § 841.0831:** The right to treatment in a tiered program that provides for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment.

e. **TCCO Policy 4.1.**

f. **Wellpath Policies 300-01, 500-02.**

### CLASS ACTION CAUSE OF ACTION NO. 4:
### EIGHTH AMENDMENT
### INADEQUATE MEDICAL CARE AND LACK OF THERAPEUTIC TREATMENT

### ALL DEFENDANTS

156.    Each of the foregoing allegations is incorporated as if fully set forth herein.

157.    Plaintiff and the Plaintiff Patients have been, and continue to be, exposed to a substantial risk of serious harm by indefinite involuntary confinement.

158.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights Plaintiff and the Plaintiff Patients. As a result, Plaintiff and the Plaintiff Patients have been and are at continuing risk of being deprived of their right to be free from excessive, cruel, and unusual punishment as conferred upon them by the Eighth and Fourteenth Amendment to the United States Constitution.

159.    Defendants have violated the Plaintiff Patients' constitutional rights in the following ways:

    a.  by allowing the Plaintiff Patients' therapeutic and housing decisions to be based upon punishment, rather than treatment, decisions;

    b.  by subjecting Plaintiff Patients to care by unqualified treatment providers;

    c.  by subjecting Plaintiff Patients to unlawful treatment modalities; and

    d.  by indefinitely confining Plaintiff Patients without regard to reasonable professional judgment and the prevailing medical standards.

## CLASS ACTION CAUSE OF ACTION NO. 5:
## EIGHTH AMENDMENT
## CONFINEMENT CONDITIONS

### ALL DEFENDANTS

160.    Each of the foregoing allegations is incorporated as if fully set forth herein.

161.    Plaintiff and the Plaintiff Patients have been, and continue to be, exposed to a substantial risk of serious harm by indefinite involuntary confinement.

162.    The forgoing actions and inactions of all Defendants constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to the constitutionally protected rights Plaintiff and the Plaintiff Patients. As a result, Plaintiff and the Plaintiff Patients have been and are at continuing risk of being deprived of their right to be free from excessive, cruel, and unusual punishment as conferred upon them by the Eighth and Fourteenth Amendment to the United States Constitution.

163.    Defendants have violated the Plaintiff Patients' constitutional rights by involuntarily confining the Plaintiff Patients in conditions that have resulted in an extreme deprivation of the minimal measure of life's necessities, including:

40

    a.   the opportunity for employment;

    b.   being free of unnecessarily restrictive housing;

    c.   the opportunity for familial, platonic, and romantic relationships;

    d.   the opportunity of medical treatment of choice; and

    e.   ready access to the Courts, among other things.

## IX.
## DAMAGES

164.   Plaintiff Jonathan Hitt seeks the following damages:

    a.   Past and future economic damages;

    b.   Past and future mental anguish for mental and emotional distress;

    c.   Pre and post-judgment interest at the highest rates allowed under the law; and,

    d.   All other compensatory and/or general damages to which Hitt is entitled.

165.   Hitt seeks punitive damages in the highest amount allowed by the law against Defendants McLane and Rakes.

## X.
## ATTORNEYS FEES

166.   Plaintiff seeks all reasonable and necessary attorneys' fees incurred in prosecuting this action and defending his civil rights, pursuant to 42 U.S.C. § 1988.

## XI.
## PRAYER

167.   **Plaintiff's individual claims**. To correct the foregoing grave injustices, Plaintiff prays that the Court:

    a.  Award compensatory damages, against all Defendants, jointly and severally;

    b.  Award punitive damages to Plaintiff;

    c.  Award Plaintiff costs, including expert fees and attorneys' fees pursuant to 42 U.S.C. § 1988;

    d.  Award injunctive relief;

    e.  Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and

    f.  Award and grant such other just relief as the Court deems proper.

168.  **Plaintiff's Claims as Class Representative for the Plaintiff Patients:** To correct the foregoing grave injustices, Plaintiff and the Plaintiff Patients request that the Court:

    a.  Assert jurisdiction over this action;

    b.  Order that Plaintiff Patients may maintain this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

    c.  Declare unconstitutional and unlawful pursuant to Rule 57 of the Federal Rules of Civil Procedure:

        i.  Defendants' violation of Plaintiff Plaintiffs' substantive right to be free from harm under the due process clause of the Fourteenth Amendment to the United States Constitution;

        ii.  Defendants' violation of Plaintiff Patients' rights under the First, Ninth and Fourteenth Amendments to the United States Constitution; and

        iii.  Defendants' violation of Plaintiff Patients' right to procedural due process under the Fourteenth Amendment to the United States

Constitution on the basis of state created liberty and property interests.

d.  Enter a permanent injunction:

    i.  Requiring Defendants to ensure that all treatment, housing, and supervision decisions made on behalf of the Plaintiff Patients made according to reasonable professional judgment by licensed and credentialed treatment professionals;

    ii.  Prohibiting Defendant McLane from overriding treatment, supervision, and housing determinations that are based upon reasonable professional judgment;

    iii.  Requiring Defendants to establish, within the TCCO, an administrative accountability structure to ensure that all treatment providers within the TCCO and Wellpath, using professionally accepted standards and practices, fully ensure that patients are appropriately housed in the least restrictive housing available, based upon the patient's progress in treatment;

    iv.  Requiring Defendants to establish, within the TCCO, an administrative accountability structure to ensure that all treatment providers within the TCCO and Wellpath, using professionally accepted standards and practices, fully and frequently consider whether a patient's behavioral abnormality has changed to the extent the patient is no longer likely to engage in acts of predatory violence;

    v.  Requiring Defendants to establish, within the TCCO, an administrative accountability structure to ensure that all treatment providers within the TCCO and Wellpath, using professionally accepted standards and practices, ensure that candidate patients are provided a seamless transition from total confinement to less restrictive housing and eventually to release from commitment.

    vi.  Requiring Defendants to establish, within the TCCO, an administrative accountability structure to ensure that all treatment providers within the TCCO and Wellpath, using professionally

accepted standards and practices, ensure that patients are provided mental health, therapeutic, and psychiatric treatment and services to meet their needs.

vii. Requiring Defendants to create, within TCCO, special expert panels to review the cases of all class members who have stagnated within any treatment tier for more than 9 months to determine whether their treatment needs are being adequately addressed and, if not, to implement appropriate remedial steps to have those treatment needs addressed;

viii. Requiring Defendants to create, within TCCO, special expert panels to review the cases of all class members who have been demoted from any treatment tier within the past 3 years to determine whether the demotion was based upon reasonable professional judgment and, if it was not, to implement appropriate remedial steps to redress the unlawful demotion;

ix. Requiring Defendants to create, within TCCO, special expert panels to review the cases of all class members who have been housed at the TCCC for more than 3 years to determine whether their treatment needs are being adequately addressed and whether their continued placement at the TCCC is based upon reasonable professional judgment and, if they are not and it is not, to implement appropriate remedial action to ensure that their treatment needs are being met and that they are appropriately being treated at the TCCC.

x. Requiring Defendants to ensure that each Plaintiff Patient, within 30 days from the patient's admission to the TCCC, has a discharge plan based upon reasonable professional judgment, which provides for the patient's release into less restrictive housing within 3 years from commitment.

xi. Prohibiting the use of polygraphs as a treatment or supervision tool.

xii. Prohibiting the use of penile plethysmographs as a treatment or supervision tool.

44

xiii.   Requiring Defendants to ensure that their practices and procedures for treating and supervising Plaintiff Patients adequately protect the safety of Plaintiff Patients; and

xiv.   Requiring Defendants to retain experts to conduct an assessment of the treatment and housing needs of the Plaintiff Patient class members, taking into account the Plaintiff Patients' needs for housing in the the least restrictive environment available based upon the patient's behavior and progress in treatment.

e.   Appoint a Neutral Monitor to oversee the implementation of this order and to issue periodic reports to the Court;

f.   Award to Plaintiff Patients compensatory damages against all Defendants, jointly and severally;

g.   Award punitive damages to the Plaintiff Patients;

h.   Award to Plaintiff Patients the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Federal Rules of Civil Procedure 23(e) and (h); and

i.   Grant such other and further equitable relief as the Court deems just, necessary, and proper to protect Plaintiff Patients from further harm by Defendants.

Date: December 31, 2020.

Respectfully submitted,

**SUMPTER & GONZÁLEZ, L.L.P.**
3011 North Lamar, Suite 200
Austin, Texas 78705
Telephone:  (512) 381-9955
Facsimile:  (512) 485-3121

By:   ___/s/ *David M. Gonzalez*_____
         David M. Gonzalez

Texas Bar No. 24012711
david@sg-llp.com

Kristin Etter
Texas Bar No. 24038884
kristin@sg-llp.com

Worth Carroll
Texas Bar No. 24091192
worth@sg-llp.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

By my signature below, I do hereby certify that on the 31st day of December 2020 a true and correct copy of the foregoing Plaintiff's Second Amended Petition was filed using the Court's electronic filing system, which will provide notice to all parties of record, specifically:

Adam Fellows
Assistant Attorney General
Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 463-2080
Fax: (512)370-9814
Email: adam.fellows@oag.texas.gov
Counsel for Marsha McLane

Amber R. Pickett
Nichol L. Bunn
Lewis Brisbois Bisgaard & Smith LLP
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 722-7100
Facsimile: (214) 722-7111
Amber.Pickett@lewisbrisbois.com
Nichol.Bunn@lewisbrisbois.com
Counsel for Defendants Wellpath Recovery Solutions f/k/a Correct Care, LLC d/b/a CCRS of Texas, LLC, Karen Harmon, Brian Thomas, and Edward Towns

By: ___/s/ *David M. Gonzalez*_____
         David M. Gonzalez